IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAVIS N. TILLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 16 cv 08293 |
| ) | |
| VILLAGE OF WONDER LAKE, ) | |
| POLICE CHIEF LARRY MASON (No. 9631), ) | |
| OFFICER TIMOTHY HARDING (No. 9636), ) | |
| OFFICER WILLIAM BACON (No. 9641), ) | |
| and OFFICER THOMAS SINK (No. 9640), ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT

**NOW COME** the Defendants, **VILLAGE OF WONDER LAKE, POLICE CHIEF LARRY MASON, OFFICER TIMOTHY HARDING, OFFICER WILLIAM BACON, and OFFICER THOMAS SINK**, by their attorneys, Maisel & Associates, and for their Rule 56 Motion for Summary Judgment do hereby state as follows:

1. The underlying arrest upon which Plaintiff filed this Civil Rights lawsuit occurred on April 14, 2012. Plaintiff claims excessive force, false arrest, false imprisonment/detention, due process, conspiracy, malicious prosecution, emotional distress arising from his arrest and pretrial detention of 11 days.

2. The cause of action occurred on April 14, 2012.

3. The Statute of Limitations for this matter expired April 14, 2014.

4. Plaintiff filed his Complaint on August 23, 2016, about two years and two months after the Statute of Limitations expired. (See Doc. # 1; Plaintiff's Complaint)

5. On October 20, 2016 the Eastern Division Judge issued a Minute Order requiring the Plaintiff to file a Memorandum explaining the Plaintiff's position on the Statute of Limitations. (Doc. #5)

6. Plaintiff filed a Memorandum claiming that he was under "legal disability" and that he was disabled because he could not manage his person, estate or finances. (Doc. #6)

7. 735 ILCS 5/13-211(a) provides, in part:

> If the person entitled to bring an action, specified in Sections 13-201 through 13-210 of this Code, at the time the cause of action accrued, . . . is under a legal disability, then he or she may bring the action within 2 years after . . . the disability is removed.

8. 735 ILCS 5/13-201 provides a 2 year limitations period for personal injuries and the US Supreme Court concluded that the respective State Statute of Limitations for personal injury apply to §1983 actions.

9. Plaintiff's Memorandum reflects an incorrect analysis of the applicable standard for legal disability in a personal injury case; the underlying facts do not support that Plaintiff was legally disabled under §13-211(a) such that the 2-year limitations period would have been tolled.

10. "In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications." <u>Hochbaum v. Casiano</u>, 292 Ill.App.3d 589, 595–96 (1st Dist. 1997).

## UNDISPUTED FACTS

11. The Plaintiff is an adult, and as a result of a motorcycle accident in 2010 suffered a brain injury resulting in aphasia (difficulty speaking), poor hand-eye coordination, panic attacks and muscle tremors/spasms. (Doc. #1, par. 5)

12. After his 2010 motorcycle accident and before the date of this occurrence the Plaintiff continued to drive vehicles, including towing a trailer with a snowmobile. (Exhibit E, McHenry Public Access page and Exhibit F, McHenry Police Report)

13. Dr. Aftab Poshni is Plaintiff's psychiatrist and treated the Plaintiff prior to the arrest, and interviewed the Plaintiff for a mental health examination in February of 2012. (See Exhibit B, pp. 10,15 - Dr. Poshni Deposition Transcript)

14. Dr. Poshni testified that dysarthria--difficulty speaking--is not indicative of what a dysarthric person can understand. (Exhibit B, pg. 16)

15. During the examination Dr. Poshni did not see evidence of any thought disorder. (Exhibit B, pg. 17)

16. Dr. Poshni noted that Plaintiff's consciousness and orientation were normal, although Plaintiff's short term memory was poor, but long term memory was intact. (Exhibit B, pp. 17,18,19)

17. Plaintiff understood why he was seeing Dr. Poshni: Plaintiff had a brain injury, he was having difficulty, and Dr. Poshni might be able to help him. (Ex. B, pg. 19).

18. Plaintiff's attention span was mildly impaired. (Ex. B, pg. 19)

19. Plaintiff was capable to give informed consent. (Exhibit B, pg. 21, 22)

20. Plaintiff understood the risks and benefits of the drugs he was prescribed. (Exhibit B, pg. 24). He was able to report to the doctor how the medication was effecting him. (Exhibit B. pg. 42).

21. Plaintiff was able to report on his divorce and his frustrations with the conditions set

by his wife. (Exhibit. B, pg. 32)

22. In September of 2012 Plaintiff reported that he was going on a trip to Colorado to attend a friend's wedding. (Exhibit B, pg. 42)

23. Dr. Poshni was able to have meaningful dialogue with the Plaintiff regarding his treatment. (Exhibit B, pg. 59)

24. *If* Dr. Poshni saw that Plaintiff didn't make sense, or was not oriented, he would have noted that in his records. (Exhibit B, pg. 60).

25. Plaintiff filed this lawsuit in his own name and not through a guardian.

26. The Plaintiff asserts that he maintained his innocence for two years in the underlying criminal case by refusing plea agreements and insisting on a trial. (Doc. #1, pp. 30-31)

27. Plaintiff's counselor, Shanda Clark, reported shortly after his release from pretrial detention that Plaintiff informed her he did not do anything wrong and does not know why the police attacked him. (Exhibit A, pg. 379 - Pioneer Center Records)

28. Two weeks after Plaintiff was released from pretrial detention counselor Clark recorded that Plaintiff told her: "[He] is somewhat angry and states that he is going to sue the police department." (Exhibit A, pg. 381)

29. Plaintiff went through a divorce and appeared numerous times for the dissolution of the marriage. (Exhibit A, pp. 345, 350, 355)

30. During a mental health assessment on September 3, 2013, another counselor, Michaela Long, wrote: "Met with client per scheduled appointment, reviewed opening information, confidentiality and the exceptions to confidentiality. The client

relayed they understood the information, confidentiality and exceptions to confidentiality. Obtained appropriate signatures from client . . ."

31. During a mental health assessment on September 3, 2013, another counselor, Michaela Long, wrote: "Met with client per scheduled appointment, reviewed opening information, confidentiality and the exceptions to confidentiality. The client relayed they understood the information, confidentiality and exceptions to confidentiality. Obtained appropriate signatures from client. . ." (Exhibit A, pg. 410)

32. In July of 2014 Plaintiff discussed his life history with his therapist. (Exhibit A, pp. 470, 471).

33. Plaintiff reported that his attorney suggested that he have a speech therapist assist him at trial. (Exhibit A, pg. 509).

34. Plaintiff's counsel in the underlying criminal matter retained Dr. Popli to assess Plaintiff's competency for trial. Dr. Popli found Plaintiff competent. (Exhibit D, Dr. Popli Report).

35. In the underlying criminal case the trial entered an Order on April 10, 2015 finding the Plaintiff competent to stand trial. (Exhibit G)

36. Plaintiff reported to his therapist, Dominci Alleva, that he planned to move to Arkansas after obtaining closure on his lawsuit with the police. (Exhibit A, pg. 255) Further, "Client reported that he has identified the land he wants to purchase in Arkansas after obtaining money from his lawsuit with the police." (Exhibit A, pg. 254).

37. Plaintiff reported to Dominici Alleva that ". . . he was 'pissed off' at his lawyer for taking so long to understand that his criminal case was over and his civil case needed to start." (Exhibit A, pg. 254).

38. As of March 21, 2014 therapist Marysue Mastey reported "Travis has been able to budget money on his own and does not require CM assistance." (Exhibit A, pg. 223)

39. And on the same date, Ms. Mastey allowed Plaintiff to sign-off on a modification of his treatment plan, which required plaintiff to understand the risks and benefits of the plan. (Exhibit A, pg. 225)

40. Plaintiff retained psychologist Dr. Steve Farmilant to provide opinions on Plaintiff's mental incompetence for this lawsuit.

41. Dr. Farmilant understood his role was to opine whether Plaintiff could understand and act upon complex information. (Exhibit C, pp. 27-28; Dr. Farmilant's Deposition Transcript).

42. Dr. Farmilant was also asked to determine whether Plaintiff was capable of filing a lawsuit on his own within the Statute of Limitations. (Exhibit C, pg. 28)

43. The expert concluded that Plaintiff was not capable of processing activities, or having an independent awareness and passage of time such as meeting deadlines or Statutes of Limitations. (Exhibit C, pp. 31, 32)

44. Dr. Farmilant testified that Plaintiff could understand the Statute of Limitations, but couldn't track time. (Exhibit C. pg. 32)

45. Dr. Farmilant agreed that Plaintiff was aware that he had options regarding the alleged police misbehavior in this case; Plaintiff was aware of the possibility of suing police in this case. (Exhibit C, pg. 40)

46. Dr. Farmilant reported that Plaintiff at one time considered an apology from the police instead of a lawsuit. (Exhibit C, pp. 39, 51)

47. Dr. Farmilant testified that Plaintiff had worked with an attorney prior to his current counsel, and that the prior attorney mistakenly told him that he could not file a lawsuit until he was found not guilty in the underlying matter. So, Plaintiff mistakenly believed he did not have the option of filing the lawsuit against the police during the limitations period. (Exhibit C, pp. 40, 41)

48. Plaintiff reported to Dr. Farmilant that he was told that he should call his lawyer three months after he won the underlying criminal case. (Exhibit C, pp. 51, 53)

49. Plaintiff was able to recount the details of the night of his arrest. (Exhibit C, pg. 57)

50. Plaintiff is able to drive which involves decision making and judgment. (Exhibit C, pg. 138)

51. As for Plaintiff's finances; Dr. Farmilant explained that it is not that Plaintiff doesn't have a financial mind, Plaintiff just didn't know that his mother arranged the bank to receive and pay his bills. (Exhibit C, pg. 135)

52. At the time Dr. Farmilant interviewed the Plaintiff he was living with his girlfriend. (Exhibit C, pg. 81)

53. Dr. Farmilant did not get all the medical records and tried to obtain more information on his own. (Exhibit C, pg. 43).

## CASE LAW

54. The Statute of Limitations for 42 USC §1983 actions follows the most analogous, respective State statute of limitations; the US Supreme Court recognizes that a §1983

action is best characterized as a personal injury action. *Owens v Okure*, 488 U.S. 235 (1989).

53. The Statute of Limitations for actions under 42U.S.C. §1983 in Illinois is two years, and the limitations period begins to run at the time of arrest and unlawful detention. *Wallace v Kato*, 549 U.S. 384 (2007).

55. When a potential plaintiff has a legal disability, the statute of limitations is tolled until the plaintiff is no longer disabled." *Parks v. Kownacki, 193 Ill.2d 164, 178 (2000), citing 735 ILCS 5/13–211 (West 1998).*

56. "In a case where a legal disability is alleged, the record must contain sufficient allegations of fact from which one could conclude that the person seeking to be found legally disabled was incompetent or suffered from a serious mental disorder which made the person **entirely without understanding** or capacity to make or communicate decisions regarding his person and **totally unable** to manage his estate or financial affairs." (highlights added); *In re Doe, 301 Ill.App.3d 123, 127 (1998)* (autistic plaintiff not legally disabled).

57. "In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications." *Hochbaum v. Casiano, 292 Ill.App.3d 589 at 595, 596; 686 N.E.2d 626 (1st Dist. 1997)*; *Basham v Hunt*; *332 Ill.App.3d 980 (1st Dist. 2002);Jo v. Private Holding Grp., LLC, 2016 IL App (1st Dist.) 151335-U* (unpublished opinion).

58. A person who is legally disabled is "incapable of managing [his] person or property **and** could not comprehend [his] rights or the nature of the act giving rise to [his]

cause of action." *In re Doe*, 301 Ill. App. 3d 123, 126–27, 703 N.E.2d 413, 414 (1998).

59. In *Sille v. McCann*, 265 Ill.App.3d at 1055, 683 N.E.2d 676 (1st Dist. 1994), the Illinois Appellate Court rejected the Plaintiff's claim of legal disability because, "[he] was not so physically or mentally impaired that he could not comprehend the nature of his injury and its implications. Therefore, we find that he may not be considered legally disabled for the purpose of tolling the statute of limitations." *683 N.E.2d at 680.*

60. Once the period of limitations begins to run on a legal claim, it continues to run without interruption, notwithstanding the fact that a subsequent disability befalls the party entitled to enforce the claim. See *Calumet Electric Street* Ry. Co. v. *Mabie*, 66 Ill.App. 235. *Schiller v. Kucaba, 55 Ill. App. 2d 9, 19, 203 N.E.2d 710, 715 (Ill. App. Ct. 1964)*; see also *McDonald v Hovey*, 110 U.S. 619 (1884)

61. Whether a statement is one of fact or of opinion depends on all the facts and circumstances of a particular case." *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 704, 767 N.E.2d 376, 382 (2002)

62. Plaintiff's original Memorandum (Doc # 6) regarding his client's legal disability cited *Alber v. Ill. Dept. of Mental Health and Developmental Disabilities, 786 F. Supp. 1340, 1359 (N.D. Ill. 1992)* in support of the missed limitations. What was not cited in the Plaintiff's memorandum was the court's recognition of the specific standard: "Entirely without understanding or capacity to make or communicate decisions" . . . *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities*, 786 F. Supp. 1340, 1359 (N.D. Ill. 1992).

63. The facts in *Alber,* and a careful reading, distinguish the matter *sub justice*: *Alber* involved disabled adults living "*as children*:" "Each had multiple handicaps, including low I.Q. and "significantly sub-average intellectual functioning with concurrent deficits and impairments in adaptive behavior relative to their ages." Because of those handicaps [the disabled adults] have always been "totally and functionally incapable ... of making any voluntary or informed decisions about their personal care, treatment or custody" *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities*, 786 F. Supp. 1340, 1359 (N.D. Ill. 1992).

64. Using the vernacular of the time, the court in *Alber* observed that not all "retarded" persons are legally disabled. *786 F. Supp at 1359.* This observation by the Court provides some relative context for the court's review in this matter.

65. Further, Alber confirms the specific query as to §1983 actions:

> As with most types of lawsuits, a claim for relief under Section 1983 generally accrues, and the statute of limitations begins to run, **"**when a plaintiff knows or has reason to know of the injury which is the basis of his action" . . . When the gravamen of the claim is some sort of wrongful confinement, the plaintiff naturally knows or has reason to know of the injury from the fact of confinement itself. Hence the claim accrues on day one of that confinement. (citations omitted); *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities*, 786 F. Supp. 1340, 1360 (N.D. Ill. 1992).

66. An attorney's miscalculation of the limitations period does not toll the applicable statute of limitations. *Miranda v Castro*, 292 F.3d 1063 (9th Cir. 2002).

## ARGUMENT

67. There is no argument but that Plaintiff sustained a traumatic brain injury in his prior motorcycle accident when fleeing police. Prior to April 14, 2012, and thereafter, Plaintiff received considerable mental health therapy and counseling. However an

overview of all Plaintiff's mental health records, testimony of his psychiatrists and his own expert reflect that he was not "completely without" cognitive ability, "totally unable" to manage his affairs **and** did not have reason to know of his alleged injury or the possible remedy. The existence of plaintiff's brain injury and resulting disabilities is not enough under 113-211(a) to find him legally disabled. *786 F. Supp at 1359*

68. The facts of Plaintiff's history reflect a troubled person who nevertheless was able to appreciate the alleged wrongful actions of the officers and his option of filing a lawsuit with the goal of monetary recovery and was able to manage his own affairs at some level—drive a car, a snowmobile, live with a girlfriend, etc.

69. Initially, the Plaintiff's Complaint pleads the existence of the brain injury and lists the sequalae as asphasia, coordination, tremors, spasms, panic attacks and a speech impediment. The plaintiff does not allege that he is totally and completely with cognitive skills. (Doc. #1, par. 5)

70. Plaintiff further alleges that over a two year period he refused plea agreements in favor of a trial, demonstrating significant discretion and decision making ability, and more importantly, that he appreciated that he had been "wronged." (Doc. #1, par.32). He was found competent to stand trial.

71. Plaintiff's understanding of his rights is documented throughout the records kept by his therapists, including immediately after his release from pretrial detention when he reported that he was unfairly arrested and planned on suing the police officers. The standard is not really whether he could balance his checkbook or reasonably manage his finances—a lot of people cannot—but whether he could appreciate his injury and the implications (*Sille*): His understanding that he was wrongfully arrested; his

11

rejection of plea agreements in order to prove his innocence; and the remedy and future plan in the guise of a lawsuit for which he would receive money and start a new life in Arkansas.

72. The Plaintiff's ability to appreciate his alleged injury is verified by his own expert psychologist, Dr. Farmilant, whose opinion focused more upon Plaintiff's ability to mark time and file a lawsuit *on his own*; neither of which is a recognized query regarding whether he understood his injury and the ramifications.

73. Indeed, Plaintiff's expert Farmilant testified the Plaintiff had consulted with a prior attorney who provided erroneous information on the statute of limitations, which, unfortunately the plaintiff followed. Correspondingly, the records directly address the Plaintiff's anxiousness to get his lawsuit filed and his corresponding frustration with his attorney for not doing so in an expeditious fashion. Dr. Farmilant's testimony underscores that aside from his other problems, the Plaintiff was acutely aware of his injury and his goal of a lawsuit. The Statute of Limitations is not tolled due to poor advice. *Miranda v Castro*, 292 F.3d 1063 (9th Cir. 2002).

74. While a superficial review of the case law suggests that legal disability can be examined in the context of the ability to discern finances or manage an estate, these are considerations of the facts which are be taken into account, but of themselves are not dispositive of the real issue. Whether the Plaintiff is totally and completely disabled such that he could not appreciate his injury and the implications.

75. Moreover, the correct analysis is explained in the case law of *Alber* cited in the Plaintiff's initial memorandum to the Court in which the court recognized that even mentally "retarded" people are not automatically considered legally disabled. The key

of course is the *absolute inability* to make informed decisions and the appreciation of the injury. This analysis is further borne out in *In re Doe, 301 Ill.App.3d 123 (1998)* involving an autistic Plaintiff who was not legally disabled ; *Hochbaum v. Casiano, 292 Ill.App.3d 589 at 595, 596; 686 N.E.2d 626 (1st Dist. 1997)*(suicidal plaintiff understood her injury, made effort to stop bleeding, and checked into hospital, not legally disabled); *Jo v. Private Holding Grp., LLC*, 2016 IL App (1st Dist.) 151335-U (Traumatic brain injury, PTSD, anxiety disorder, seizures, depression, not legally disabled).

76. Herein, the Plaintiff understood and perceived that from the time of the arrest the police actions were allegedly wrongful and that he would maintain his innocence and obtain a monetary remedy.

77. Then, one needs to consider the context of Plaintiff's life: He was driving, snowmobiling, going to parties, living with a girlfriend, providing informed medical consent, concerned about his divorce, traveling to weddings, and of course, impatiently waiting for his lawsuit to be filed and his hoped-for settlement/ judgment.

78. While Plaintiff might not have been living a complete life, there is nothing in his medical history, nor his expert's opinions, that he was *completely* and *totally* without ability to comprehend and make certain decisions.

79. Looming over all these facts is the testimony of Plaintiff's expert that Plaintiff missed the Statute of Limitations because a prior attorney provided erroneous advice.

## CONCLUSION

80. §1983 actions are personal injury actions and controlled by the respective State Statute of Limitations; two years in Illinois, but which can be tolled by a legal

disability. The Plaintiff suffered a traumatic brain injury two years before the date of his arrest and there is no argument that he suffered from disability thereafter. However, those disabilities do not rise to the level of a "legal disability." The case law is clear that a legal disability means a mental disability -- complete and total, and in the context of personal injury actions, be such that the Plaintiff is unaware of his injury and the implications. From the Plaintiff's medical history, his own pleadings, and the testimony of his own therapists and expert, the Plaintiff understood that he was injured by the wrongful arrest and the implication was a future lawsuit against the police officers.

81. Moreover, the facts of the Plaintiff's life reveal that he was not living as a child, but engaging in activities which reflect a level of comprehension and discernment, although admittedly not at his premorbid level.

82. Finally, and perhaps the most telling fact is that Plaintiff had, in fact, consulted with counsel and provided poor information on the Statute of Limitations; which advice the plaintiff knowingly abided to his detriment.

83. Throughout this brief defendants have referred to the plaintiff's appreciation of the wrongful arrest, *etc*. Defendants do not intend to imply that the arrest actually wrongful; Plaintiff's allegations of those facts are denied.

**WHEREFORE**, **Defendants**, **VILLAGE OF WONDER LAKE, POLICE CHIEF LARRY MASON, OFFICER TIMOTHY HARDING, OFFICER WILLIAM BACON**, and **OFFICER THOMAS SINK**, by and through their attorneys, MAISEL & ASSOCIATES, respectfully request this Honorable Court to

enter Summary Judgment in their favor and against the Plaintiff, with prejudice, and with costs.

                                                Respectfully submitted,
                                                MAISEL & ASSOCIATES


                                      By: /s/ Eric A. Krumdick
                                                Attorney for Defendants

Eric A. Krumdick (ARDC #6190791)
MAISEL & ASSOCIATES
***MAILING ADDRESS:***
PO Box 64093, St. Paul, MN 55164-0093
***STREET ADDRESS:***
161 N. Clark Street, Suite 800, Chicago, Illinois  60601
(P) 312-458-6534
(F) 855-821-7317
E-mail: ekrumdic@travelers.com
General E-Mail: RPMLaw1@travelers.com