## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Travis Tillman, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16 CV 8293 |
| vs. | ) |
| | ) Judge Philip G. Reinhard |
| Village of Wonder Lake, et al., | ) |
| | ) |
| Defendants. | ) |

### ORDER

For the reasons set forth below, defendants' motion for summary judgment [34] is granted. This case is terminated.

### STATEMENT-OPINION

On August 23, 2016, plaintiff, Travis Tillman ("plaintiff"), filed a complaint against defendants Village of Wonder Lake, Village police chief Larry Mason, and Village police officers Timothy Harding, William Bacon, and Thomas Sink ("defendants"). Plaintiff's complaint seeks damages under 42 U.S.C. § 1983 for claims of false arrest, false imprisonment, excessive force, unlawful detention, due process violations, and conspiracy.[1] The complaint further alleges state law claims of malicious prosecution and intentional infliction of emotional distress. Plaintiff brings claims of respondeat superior and indemnification against the Village. *See* [1]. On April 2, 2018, defendants filed a motion for summary judgment arguing this matter must be dismissed in violation of the applicable statute of limitations. The motion is fully briefed and before the court for review. For the following reasons, defendants' motion is granted.

    A.    **FACTUAL BACKGROUND**

The court recounts the facts as presented by the parties to the extent they are relevant to the court's ruling on defendants' motion for summary judgment.

On April 14, 2012, plaintiff Travis Tillman was arrested by the Wonder Lake police department and charged with three felonies and four misdemeanors, including three counts of aggravated battery to a police officer. Plaintiff was present at a party in Wonder Lake where the

---

[1] On March 1, 2017, this matter was transferred to the Western Division from the Eastern Division of the Northern District of Illinois. *See* [18].

1

police were called in response to an anonymous nuisance complaint. According to plaintiff's complaint, plaintiff answered the door when the police arrived but was only able to open the door approximately five inches. The officer then forced the door open and chased plaintiff into the house. The officer then repeatedly struck him with a flashlight. Several of the other partygoers told the police that plaintiff was neither drunk nor attempting to resist arrest but was, in fact, disabled and had a severe speech impediment. As the officer was attempting to handcuff plaintiff, plaintiff suffered a tremor in his right arm. At that point, the officer shoved plaintiff to the ground where plaintiff's tremors worsened and he began to shout to officer (through his impaired speech) that he was disabled and was not trying to resist arrest. Throughout plaintiff's interaction with the police, the other attendees of the party continued to shout at the officers that plaintiff was disabled. The Wonder Lake police officers then arrested plaintiff and took him to the jail. Plaintiff was in custody for eleven days before he was able to bond out.

On April 15, 2012, plaintiff was charged with various felonies and misdemeanors. Plaintiff maintained his innocence for two years, refusing plea offers and insisting on taking his case to trial. On his day of trial - August 24, 2014 - the McHenry County State's Attorney's Office dismissed the charges. On August 23, 2016, plaintiff filed the instant case.

Regarding plaintiff's disability, the facts reveal plaintiff (33 years old at the time of the filing of the complaint) had been severely injured in a 2010 motorcycle accident. Plaintiff was left with a brain injury resulting in aphasia, poor hand-eye coordination, tremors, muscle spasms, panic attacks, and a speech impediment. Plaintiff does not dispute that following his motorcycle accident (and prior to the date of this incident), he continued to drive motor vehicles, including towing a trailer with a snowmobile.

In February of 2012 (approximately three months prior to this incident), plaintiff met with Dr. Aftab Poshni, a psychiatrist, with a chief complaint of "mood swings." Dr. Poshni conducted a Psychiatric Diagnostic Interview Examination with plaintiff to arrive at a psychiatric diagnosis and formulate a treatment plan. Plaintiff's psychiatric history revealed that despite his physical recovery from the 2010 motorcycle accident, plaintiff showed mood swings in the form of labile moods, periods of anger, irritability, agitation, and sadness. Dr. Poshni noted (through his interview with plaintiff as well as plaintiff's social worker) plaintiff had dyslexia, did poorly in school, dropped out of high school, had worked as a plumber, was married with three children and was separated from his wife. During Dr. Poshni's mental status examination of plaintiff he found the following to be normal or appropriate: appearance, behavior, formal thought (rate, organization, association), thought content (suicidal ideation, homicidal, violent, fixed ideas, hallucinations), level of consciousness, orientation, long-term memory, past history of events, vocabulary, awareness of illness, willingness to participate in treatment, and ability to give express and informed consent. Dr. Poshni testified he did not see any kind of thought disorder and believed that plaintiff understood that he had a brain injury, what the injury was caused by, and that problems stemmed from that injury. According to Dr. Poshni, plaintiff could also make decisions based on his treatment. Dr. Poshni noted that plaintiff's speech was frequently unintelligible - dysarthric. The doctor testified that dysarthria is a speech disorder and is not indicative of what a person is understanding. Dr. Poshni found plaintiff's short term memory to

2

be poor, his attention span was mildly impaired, and he had a limited knowledge of current events.

In his deposition, Dr. Poshni testified he met with plaintiff and treated him on and off from February 2012 through July 2013. During that time, Dr. Poshni prescribed various medications to assist plaintiff with his mood swings. Dr. Poshni documented that the medications were helping plaintiff keep his moods stable. Plaintiff discussed with Dr. Poshni such things as the details of his divorce proceedings, his feeling about his contacts with the police in April of 2012, his trip to Colorado to attend the wedding of a friend, and an arrest after a physical altercation with his father. Dr. Poshni also noted the times that plaintiff would come to his appointments with his mother or his social worker.

The record also contains progress notes from plaintiff's therapy sessions with counselors from the Pioneer Center Human Services. Like plaintiff's appointments with Dr. Poshni in the same time frame and beyond, plaintiff discussed with the Pioneer counselors his mood swings and other feelings. He discussed with these counselors his feelings of anger and frustration regarding his divorce and his limited contact with his three children. Despite these feelings, plaintiff told the counselor that he knows he is a good father and is able to love, encourage and be supportive of his children. In May of 2012 (less than a month after this incident), plaintiff talked to his counselor about his anger with the police and how he was planning to sue the police department. Plaintiff reported attending church regularly and maintaining a friendship with his ex-girlfriend, beginning to date other women, developing friendships, and working on his truck. Plaintiff also reported plans to eventually move to Arkansas and purchase land after obtaining closure on his lawsuit with the police.

Of note, records from the Pioneer Center (from 2015) also reveal that plaintiff had been unable to work since his 2010 brain injury due to his poor coordination and balance. The notes indicate that plaintiff was interested in returning to work, perhaps mowing lawns and snow plowing, stating he would work with a friend to achieve this goal. The documents also indicate plaintiff possesses skills for self management, had recently traveled to Idaho with his father, rides his bike[2] and attends church. The records state he is motivated to solve problems, improve his speech, spelling, reading comprehension and memory, be healthy, and have a long term relationship. It also states he needs help increasing his public assistance benefits and finding housing after his parents move. The documents also note that plaintiff has language, communication and cognitive barriers, short-term memory and reading problems, financial and decision making difficulties, and struggles to remember appointments.[3]

---

[2] It is not clear from the record if "bike" refers to a bicycle or a motorcycle.

[3] The court notes here that in his response to defendants' Rule 56 statement of facts [34], plaintiff moves to strike defendants' paragraphs 38 and 39 of their "Undisputed Facts" [34]. In those two paragraphs, defendants cite to two pages of a therapist's report that are not included in the record. Because defendants have failed to provide the record to support these factual allegations, the court has disregarded these two paragraphs. Therefore, plaintiff's motions to strike are denied as moot.

Plaintiff retained Steven Farmilant, Psy.D. to provide an expert opinion on whether plaintiff could process or act upon complex information, including whether he was capable of filing a legal cause of action within an applicable statute of limitations. Dr. Farmilant interviewed plaintiff on July 14, 2017. Based on his interview with plaintiff and plaintiff's mother as well as his review of plaintiff's records, Dr. Farmilant concluded that plaintiff was incapable of processing activities that are dependent on the awareness and passage of time and that plaintiff would not be aware of a statute of limitations or any other deadline. At his deposition, Dr. Farmilant testified plaintiff discussed the possibility of contacting lawyers after the completion of the criminal case but he didn't want to "seem greedy" stating: "Originally I didn't want to take the case to court, I just wanted an apology." Plaintiff also discussed a job at a motorcycle shop where the employer allowed plaintiff to make his own schedule due to his difficulty telling time. Plaintiff told Dr. Farmilant the company was bought out and he, therefore, lost his job.[4] Plaintiff also discussed with Dr. Farmilant the fact that he is supposed to have the opportunity to visit with his children twice a month and he is only able to see them once a month, his desire to move to Arkansas, and that he was living with a girlfriend at the time. He also testified plaintiff's impairment prevented him from realizing the significance of filing a lawsuit within the statute of limitations - as too abstract of a concept for plaintiff to maintain in his working memory. According to Dr. Farmilant, "[p]laintiff is not a high functioning guy" and is unable to manage his own life independently. However, Dr. Farmilant also testified that plaintiff was aware that he had options regarding filing a lawsuit: "I do have information that [plaintiff] was aware of the possibility that he could sue the police." Dr. Farmilant went on to say that while plaintiff understood that he might have a cause of action against the police, he was given misinformation by an attorney that he would have to wait to file a civil lawsuit until a favorable outcome in the criminal matter. According to Dr. Farmilant, while additional information would have been helpful to his assessment, he believed "it [was] likely that that information [i.e. the advice of the attorney] impacted his missing the deadline to file [a civil suit] due to the level of anxiety that he experienced."

Plaintiff has presented the court with two affidavits from his mother, Jennie Tillman. According to the affidavits, Ms. Tillman must keep a calendar for plaintiff and help him to get to appointments on time. Plaintiff receives Social Security Disability benefits and Ms. Tillman pays his bills. She provides him with spending money to buy gas for his truck as he is able to drive and goes to places that are familiar to him. According to the affidavits, plaintiff is unable to understand, remember or comprehend complex instructions. Plaintiff and his mother began talking to an attorney in 2016 about the potential for a lawsuit. According to his mother, plaintiff was upset and had a difficult time understanding when the attorney advised that there might be a problem with the case.

---

[4] According to Dr. Farmilant's report detailing his July 12, 2017 interview with plaintiff's mother, plaintiff's mother advised that plaintiff had worked for the motorcycle shop detailing bikes but had to quit because the shop did not pay plaintiff enough to live on and if he stayed he would lose his government benefits. According to plaintiff's mother's December 15, 2017 affidavit, plaintiff was asked to stop coming to the shop because the management did not like plaintiff's random hours.

4

Finally, while the court gives it little weight, plaintiff was found "fit to stand trial and...competent for adjudication" in his criminal matter on April 10, 2015, following a stipulation by the state and defense (here, plaintiff) to a report prepared by Dr. Raman Popli.

### B.    LEGAL STANDARD

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" supported by citations to materials in the record, including, among other things, depositions, documents, and affidavits. FED. R. CIV. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### C.    ANALYSIS

It is well established that the statute of limitations for claims under 42 U.S.C. § 1983 is borrowed from the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461-62 (7th Cir. 1998). In Illinois, the period to file a general personal injury action is two-years, pursuant to 735 ILCS 5/13-202 ("Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution...shall be commenced within 2 years next after the cause of action accrued."). *Woods v. Illinois Dept. Children and Family Svcs.*, 710 F.3d 762, 766 (7th Cir. 2013). The date of the claim's accrual is defined by federal law. *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). "A § 1983 claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). A claim concerning the alleged "[a]pplication of excessive force...violates the Constitution and is immediately actionable." *Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998). The statute of limitations for a false arrest claim "begins to run at the time the claimant becomes detained pursuant to the legal process." *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016). Here, plaintiff was arrested on April 14, 2012, and brought this action on August 23, 2016. There is no dispute between the parties that plaintiff has filed his action outside the applicable two-year statute of limitations. Plaintiff's argument is that he is a person under a "legal disability" pursuant to Illinois law and, therefore, the two-year statute of limitations is tolled.

Under Illinois law, "[i]f the person entitled to bring an action [for personal injury pursuant to 735 ILCS 5/13-202], at the time the cause of action accrued,...is under a legal disability, then he or she may bring the action within 2 years after...the disability is removed."

735 ILCS 5/13-211. Also under Illinois law, "a person suffers under a legal disability if that person is entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs." *Goodman v. Cook County*, 697 Fed. Appx. 460, 461 (7th Cir. 2017) (citations omitted). Following a review of the record, the court finds plaintiff has not met this high standard.

In *Goodman*, plaintiff brought suit under 42 U.S.C. § 1983 against the City of Chicago more than two years after the alleged constitutional violation. *Id*. at 460. Plaintiff argued he missed the filing deadline due to receiving bad advice from his attorney and because he suffered from mental illness. *Id*. He argued that several lawyers told him he could not bring a civil action until the conclusion of his criminal case and also presented evidence of a mental illness. The court held that any bad legal advice did not affect the plaintiff's discovery of his potential claim and that even if he did need help paying bills and handling other personal matters, "[i]n a personal injury case, a person is not legally disabled if he...can comprehend the nature of the injury and its implications." *Id*. at 462 (citation omitted). *See also In re Doe*, 301 Ill. App. 3d 123, 127 (1998) ("...many impairments both physical and mental may be termed disabilities, but all are not legal disabilities.").

Plaintiff provides very little case law to support his argument that the statute of limitations should be tolled in this case due to a legal disability. He does cite to *Alber v. Illinois Dept. Of Mental Health and Developmental Disabilities*, 786 F.Supp. 1340 (N.D. Ill. March 3, 1992), and *Passmore v. Walther Memorial Hospital*, 152 Ill. App. 3d 554 (1987). Neither case is persuasive. In relevant part, *Alber* addressed the legal competence of two adult men, both of whom suffered from Down syndrome, and were "totally and functionally incapable of making any voluntary or informed decisions about their personal care, treatment or custody." *Alber*, 786 F. Supp. at 1359. There, the court found that plaintiffs had "more than sufficent[ly] establish[ed]...that [the men] were incompetent" and, therefore, the statute of limitations for filing suit was tolled. *Id*. at 1360. In *Passmore*, the Illinois Appellate Court reversed the state trial court dismissal of plaintiff's complaint based on a failure to bring suit within the applicable two-year statute of limitations. The *Passmore* court found that the father's medical malpractice action as guardian of his son's estate sufficiently alleged that his son was under a legal disability continuously from the age of eight months. *Passmore*, 152 Ill. App. 3d. 554. The facts showed that the son was totally without understanding or capacity to make or communicate decisions. *Id*. However, the issue in *Passmore* was not whether the son was legally disabled, but rather whether a plaintiff's right to a tolling of the statute was contingent upon a formal adjudication of disabled. The court held it was not. *Id*. at 557-58. Neither *Alber* nor *Passmore* is factually or legally on-point with the instant case and the court finds neither case compelling.

Here, despite Dr. Farmilant's conclusions that plaintiff would not be aware of a statute of limitations or any other deadline due to his inability to process activities that would be dependent on the awareness and passage of time, the record does not support a finding that plaintiff is "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs." Rather, the facts show that plaintiff had an understanding of his right to bring a civil action against the police. According to

the record, plaintiff discussed with his therapist (less than a month after the incident) that he was planning to sue the police department. The record further shows plaintiff had contact with an attorney who advised plaintiff he could not bring a civil suit against the police until the completion of his criminal case. The facts also reveal plaintiff is capable of, among other things, driving, working on his truck as well as motorcycles, traveling out of state with family and friends, maintaining relationships, attending church, and making plans for his future - including conceptualizing a plan to buy land in Arkansas with money potentially received from a lawsuit. While the court recognizes and appreciates that plaintiff is not "high functioning" and needs help managing his finances and keeping appointments in a timely manner, these problems (including others as documented) do not rise to the level of a "legal disability" sufficient to toll the applicable two-year statute of limitations in an action brought under 42 U.S.C. § 1983. Therefore, defendants' motion for summary judgment is granted. This case is terminated.

Date: 06/21/2018                    ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)